Mary LINKER-FLORES *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES
and A.F., A.F., L.L., C.L., and K.L., Minor Children

03-1099                                          217 S.W.3d 107

Supreme Court of Arkansas
Opinion delivered November 17, 2005

*Anne Orsi Smith, P.A.*, by: *Anne Orsi Smith*, for appellant.

*Gray Allen Turner*, for appellee.

Aɴɴᴀʙᴇʟʟᴇ Cʟɪɴᴛᴏɴ Iᴍʙᴇʀ, Justice. The appellant, Mary Linker-Flores is the mother of five children: K.L., C.L., L.L., A.F., and A.F. In a previous appeal, we stated the facts of this case as follows:

. . . This case began on July 27, 2001, when the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of all five children. DHS had been investigating the Linker-Flores family since April 9, 2001, when the Department received an initial report of educational neglect. On May 10, 2001, the case was assigned to a caseworker and services such as home visits and a referral for housing were offered to the family. On July 25, 2001, DHS received a call from a detective with the Little Rock Police Department, stating that [K.L.] had raped [C.L.] and [L.L.]. At this time, both parents were arrested on warrants. [K.L.] was arrested, and the assessor initiated a seventy-two-hour hold on the children because of the sexual abuse allegations and the lack of a legal caretaker. The court entered an Order for emergency custody and set the matter for an emergency hearing on August 1, 2001.

At the August 1, 2001 hearing, the trial court found that probable cause existed and maintained the children in the custody of DHS. The court also ordered a home evaluation of the Linker-Flores home and supervised visitation for Mr. and Mrs. Flores at the DHS office.

On September 13, 2001, at the adjudication hearing, the court found the children were dependent/neglected and maintained them in DHS custody. The court also ordered both parents to attend and complete parenting classes. The court set March 11, 2001, for another review. . . .

On July 22, 2002, at the permanency planning hearing, the court . . . set January 8, 2003, as the date for the termination hearing.

*Linker-Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004).

At the termination hearing, numerous witnesses testified to various problems that made Mrs. Linker-Flores an unsuitable parent. Dr. Janice Church, the therapist for L.L. and Mrs. Linker-Flores, testified that Mrs. Linker-Flores saw herself as a victim and was unable to put her children's needs above her own. She further testified that L.L. took the role of a "parentified child" with her younger siblings, meaning she took over the care-giving role for them. Also, Mrs. Linker-Flores's frequent incarcerations interrupted her therapy sessions with her children and thereby impeded their progress.

Jim Harper, the therapist working with C.L., testified that Mrs. Linker-Flores failed to protect C.L. from abuse by K.L., even after C.L. came to her and told her K.L. was trying to "get gay" with him. Additionally, Dr. Paul DeYoub performed a psychological evaluation on Mrs. Linker-Flores and testified that she remained ambivalent about the sexual abuse and was unsympathetic toward L.L. In fact, she referred to L.L. as a pathological liar.

Finally, Anna Foster, a DHS caseworker, testified that Mrs. Linker-Flores had not maintained a permanent home and had been dishonest when asked about her living situation. She stated that she had attempted to do a home study on a duplex that Mrs. Linker-Flores claimed to be living in, but that she was unable to complete it because she could never confirm that Mrs. Linker-Flores actually lived there. Ms. Foster also stated that DHS did a housing referral for Mrs. Linker-Flores, but the referral had not been successful.

The circuit court, after hearing all the evidence, found that it was in the children's best interest to terminate Mrs. Linker-Flores's parental rights. She then filed a timely notice of appeal, and her appointed counsel, Anne Orsi Smith, petitioned this court to be relieved as counsel, stating she could find no meritorious grounds for appeal. We denied counsel's motion to be relieved and ordered the parties to brief the issue of whether court-appointed counsel representing an indigent parent in a termination proceeding should be required to file a no-merit brief comparable to that required under *Anders v. California*, 386 U.S. 738 (1967), when there appear to be no meritorious grounds for appeal. *Linker-Flores v. Arkansas Dep't of Human Servs.*, 356 Ark. 369, 149 S.W.3d 884 (2004) (*per curiam*). After review of that issue, we decided such a procedure was necessary to protect the rights of indigent parents whose parental rights have been terminated. *Linker-Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Mrs. Linker-Flores's counsel now submits a no-merit brief, and requests to be relieved as counsel. Mrs. Linker-Flores has also submitted *pro se* points for appeal in the form of a letter to the court. As this is a second appeal in the *Linker-Flores* case, jurisdiction is appropriate pursuant to Ark. Sup. Ct. R. 1-2(a)(7)(2005).

Mrs. Linker-Flores's counsel has filed a no-merit brief pursuant to *Linker-Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), requesting to be relieved as counsel. In *Linker-Flores*, we described the procedure for withdrawing as counsel from a termination-of-parental-rights appeal:

[A]ppointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal.

*Id.* The only issue presented in the no-merit brief filed by counsel is whether there is clear and convincing evidence to support the circuit court's decision to terminate Mrs. Linker-Flores's parental rights. In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores v. Arkansas Dep't of Human Servs., supra.* Because there is clear and convincing evidence to support the circuit court's order in this case and because we find no other issues of arguable merit, we grant appointed counsel's motion to be relieved as counsel and affirm.

Under Ark. Code Ann. § 9-27-341 (Supp. 2005), a circuit court may terminate parental rights if the court finds that there is an "appropriate permanency placement plan for the juvenile" and finds by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health, and safety of the child, caused by continuing contact with the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

(b) It is not necessary that the twelve-month period referenced in subdivision (b)(3)(B)(I) of this section immediately precede the

filing of the petition for termination of parental rights or that it be for twelve (12) consecutive months.

Ark. Code Ann. § 9-27-341(b)(1)(a), (b)(3)(A) & (B)(i)(a), (b); *Camarillo-Cox v. Arkansas Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Camarillo-Cox v. Arkansas Dep't of Human Servs., supra.* When the burden of proving a disputed fact is by clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Linker-Flores v. Arkansas Dep't of Human Servs., supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Camarillo-Cox v. Arkansas Dep't of Human Servs., supra.* Such cases are reviewed *de novo* on appeal. *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). For purposes of reviewing the sufficiency of the evidence in this case, we must examine evidence from all hearings and proceedings in the case, as the circuit court took judicial notice and incorporated by reference into the record all pleadings and testimony in the case that occurred before the termination-of-parental-rights hearing. *See* Ark. Code Ann. § 9-27-341(d)(2). In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo-Cox v. Arkansas Dep't of Human Servs., supra.* In the instant case, the circuit court found that there was ample evidence to meet all the above-cited statutory requirements for termination.

The evidence supported the circuit court's finding that termination was in the children's best interest. DHS had devised a plan for the children whereby C.L. and the young girls would remain in their foster homes and eventually be adopted. L.L., because of her severe reaction to the abuse, would be placed in a therapeutic foster home, and she would also eventually be adopted. Ms. Delandrea Reddix, an adoption specialist, testified that the children were adoptable and that there were families interested in these types of children. Her testimony was not contradicted, and thus it was reasonable for the circuit court to conclude that the children were adoptable. Additionally, there was clear and convincing evidence that continued contact with Mrs. Linker-Flores would result in harm to the children. She repeatedly

put her needs above the needs of her children. She also refused to believe the claims of sexual abuse of C.L. and L.L. until her oldest son K.L. admitted his guilt to her. Further, she blamed the children for the involvement of DHS and stated to L.L. during a visit, "Why did you do this to me? Why do you have to keep me upset?" Mrs. Linker-Flores was unable to demonstrate stable housing for the children and was frequently untruthful about her housing situation. Additionally, despite significant testimony concerning her husband's drinking habits, Mrs. Linker-Flores categorically refused to recognize that his drinking could create problems for the children.

There was also sufficient evidence to support the circuit court's determination that the statutory grounds for termination were met. The case began originally with an emergency petition based on educational neglect, after reports that C.L. and L.L. had missed an extraordinary amount of school. Melissa Smith, a counselor at C.L. and L.L.'s school, testified that both children had poor attendance. She stated that if L.L. made it to school once or twice a week, that was a good week. She also noted that, on each occasion, Mrs. Linker-Flores called the school to report that a child would be absent. Ms. Smith further testified that both C.L. and L.L. came to school "filthy dirty." L.L. testified that she missed so much school because she was taking care of her little sisters when her mother was at work. She also stated that, on some days, her brother would take care of her sisters, and on those days she went to school. This evidence was sufficient to justify a finding of educational neglect by the circuit court.

In addition, after the original petition was filed, new facts concerning the sexual abuse of L.L. and C.L. by K.L. came to light. The revelation of this abuse brought new concerns to the *Linker-Flores* case. Arkansas law states that it is not enough for a parent to refrain from personally harming the child; instead, it is a parent's duty to take affirmative steps to protect the child from harm. *Wright v. Arkansas Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). In *Wright*, the parental rights of a mother were terminated when she failed to protect her infant son from abuse by her boyfriend. Though the mother had never personally abused her son and had cooperated with DHS, the Arkansas Court of Appeals nonetheless upheld the termination of her rights because she had ignored signs that her boyfriend was abusing her son. *Id.* Similarly, here, there was testimony that Mrs. Linker-Flores ignored signs that C.L. and L.L. were being abused by K.L. Jim

Harper, a therapist who was working with C.L., testified that C.L. told him about attempting to tell his mother that "[K.L.] tried to get gay with me" but his mother "told [him] to shut up." Additionally, Mrs. Linker-Flores herself testified that both children had shown signs of abuse, but she had been unable to recognize those signs.

Mrs. Linker-Flores also showed little improvement in recognizing her responsibility to protect the children. Dr. Janice Church, who worked in therapy with L.L. and her mother, testified that Mrs. Linker-Flores "identified herself more as a victim of the system" and had a hard time seeing what she needed to do for her children. She stated that, while Mrs. Linker-Flores was beginning to make some progress, it "was going to be a very slow process of her really getting to the point that she could provide that necessary support." Finally, though Mrs. Linker-Flores did eventually acknowledge the abuse of C.L. and L.L., Dr. Church testified that she had "no idea whatsoever of the magnitude of the abuse." Based on this evidence, the circuit court did not err in concluding that statutory grounds for termination, including educational neglect and failure to protect, existed for the termination of parental rights.

■ Mrs. Linker-Flores's frequent incarcerations and complete failure to secure appropriate housing for her children further evidences her failure to effectively care for them. While incarceration is not, of itself, conclusive on the termination issue, imprisonment does not toll a parent's responsibilities toward his or her children. *Malone v. Arkansas Dep't of Human Servs.*, 71 Ark. App. 441 (2000)(citing *Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976)). Here, Mrs. Linker-Flores's repeated incarcerations interfered significantly with her therapy as well as her children's therapy. Additionally, despite numerous attempts by DHS to do a home study of the Linker-Flores home, no study was ever done because DHS was not able to confirm Mrs. Linker-Flores's location. At the time of the termination hearing, Mrs. Linker-Flores was incarcerated, but she was planning to live with Mr. Flores when she got out. He was living in a duplex with several other men, an environment that Mrs. Linker-Flores acknowledged would be inappropriate for her young children. In sum, the evidence of frequent incarcerations, as well as a complete failure to secure adequate housing, supports the circuit court's finding that parental rights should be terminated.

■ Finally, the circuit court was justified in finding that DHS had made reasonable and meaningful efforts to rehabilitate the home and correct the conditions which necessitated removal, as required by Ark. Code. Ann. § 9-27-341. Over the course of the fifteen-month investigation, DHS offered numerous services, therapy options, and classes to Mrs. Linker-Flores. She was afforded counseling sessions with Dr. Church, parenting classes, and a housing-referral offer by DHS. Although Mrs. Linker-Flores did complete the parenting classes and attempted to participate in therapy, her progress was hindered by frequent incarcerations, an inability to take responsibility for her actions, and an inability to prioritize the needs of the children above her own needs. At one point, C.L. was removed from a therapy session with Mrs. Linker-Flores due to repeated inappropriate comments by his mother. Additionally, DHS made several attempts to verify Mrs. Linker-Flores's residence and perform a home study, but she failed to provide accurate information about her living situation. The evidence summarized above is sufficient to support the circuit court's determination that DHS provided meaningful efforts to rehabilitate the home and correct the conditions which necessitated removal, but that these efforts were not sufficient to remedy the problems.

Following the standard we have set out for no-merit briefs in criminal cases, no-merit briefs in termination-of-parental-rights cases "shall include an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal." *See* Ark. Sup. Ct. R. 4-3(j) (2005). In this case, our review of the record reveals three additional rulings adverse to Mrs. Linker-Flores in the termination hearing that were not abstracted or included in the argument section. Generally speaking, if a no-merit brief fails to address all the adverse rulings, we will send it back for rebriefing. *Brady v. State*, 346 Ark. 298, 57 S.W.3d 691 (2001); *Mitchell v. State*, 327 Ark. 285, 938 S.W.2d 814 (1997). However, as this is our first occasion to address the specific procedures for a termination-of-parental-rights no-merit brief and as the adverse rulings were clearly not meritorious, we decline to order rebriefing so as to avoid any further delay in this case.

The first adverse ruling by the circuit court was made in response to Mrs. Linker-Flores's argument that she was not given adequate notice of the hearing to terminate her parental rights. She argued that, because she had not received a copy of the termination petition, the hearing should be a review hearing instead of a termination hearing. The circuit court determined that notice was sufficient and denied the motion. According to Ark. Code Ann. § 9-27-341(b)(2), "The petitioner shall provide the parent or parents actual or constructive notice of a petition to terminate parental rights." Here, the circuit court announced at the preceding hearing, while Mrs. Linker-Flores was in attendance, that the next hearing would be to terminate parental rights. Thus, she was given actual notice of the hearing, which was sufficient to apprise her of the termination hearing. *See Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979) (actual notice of adoption proceedings before the entry of judgment held to be sufficient); *see also Arkansas Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998)(actual notice sufficient to satisfy due process and statutory requirements for criminal contempt hearing).

The second adverse ruling came at the conclusion of parent-counsel's questions to Anna Foster regarding Mrs. Linker-Flores's participation in therapy. During the examination, the following colloquy occurred:

Q Now they were in therapy, weren't they?

A At some times.

Q Their mother was in therapy all the time, wasn't she

A Yes —

Q When she was able to be there, she was there, right?

A She was there, but most of the time she had not achieved the goals that she needed to complete all of the therapy.

Q But she was in therapy, right?

A She was in therapy.

Q Ok.

At that point, counsel for DHS objected to the question, "But she was in therapy, right?" as having been asked and answered. The circuit

court sustained the objection and parent-counsel agreed to move on from the topic. Arkansas Rule of Evidence 611(a)(3) provides that the court shall exercise reasonable control over the mode of interrogating witnesses. In this case, Mrs. Linker-Flores had already established that she was in therapy, and thus the circuit court did not abuse its discretion by sustaining the objection.

■ The third adverse ruling occurred when, on direct examination of Mrs. Linker-Flores, her counsel asked, "Until today did you know that divorcing your husband was something that would have been expected of you to get your children back?" Counsel for the children objected, arguing that the question misinterpreted the evidence presented at the hearing. The circuit court sustained the objection, stating that DHS had not given "any sort of implication along those lines." Indeed, while there was significant testimony about Mr. Flores's problems and the problems in their marriage, there was no testimony that a divorce was required or expected in order for Mrs. Linker-Flores to be awarded custody of her children. The record supports the circuit court's conclusion, and its refusal to allow the question was not an abuse of discretion.

There is also no merit to any of the arguments submitted by Mrs. Linker-Flores. In a letter to the court, she argues against termination on three grounds: first, that the witnesses against her at trial were not credible; second, that the evidence showed some progress immediately preceding the termination; and third, that she has made progress since the termination. None of these arguments merit reversal of the circuit court's decision.

First, despite Mrs. Linker-Flores's attacks on much of the testimony presented as untruthful, this court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Mrs. Linker-Flores presented no evidence at the termination hearing to support her arguments that the witnesses were being untruthful. Thus, we cannot say that the circuit court's determination that there was clear and convincing evidence to support termination was clearly erroneous.

■ Mrs. Linker-Flores also attacks the termination order by suggesting that she made some improvements prior to the termination hearing and additional improvements after the termination hearing that warrant reversal. However, we have refused to

reverse a circuit court's termination of parental rights when the parent shows only last-minute improvement. *Trout v. Arkansas Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004). In *Trout*, our court upheld a circuit court's termination of parental rights where the mother had shown marginal improvements immediately preceding the termination hearing. We stated, "[I]t was appropriate for the judge to consider the history of [the parent's] appearances before him in determining whether she could be trusted to continue making positive steps." *Id.* In this case, there was testimony that Mrs. Linker-Flores began making limited improvements in therapy prior to termination, but Dr. Church testified that it "was going to be a very slow process of her really getting to the point that she could provide that necessary support." Additionally, at the time of the termination hearing, Mrs. Linker-Flores was again incarcerated and Dr. Church had testified that when Mrs. Linker-Flores was incarcerated, she did not attend therapy sessions. The circuit court found, in regards to Mrs. Linker-Flores, "[I]t is doubtful that reunification will occur within the very near future or ever." Based on the evidence presented at the hearing, the court's conclusion was not clearly erroneous. Finally, we cannot consider Mrs. Linker-Flores's suggestions that she has, since the termination hearing, made progress such as securing housing. As any possible evidence of these developments would have arisen after the termination hearing, such evidence was not presented for the circuit court's consideration and is not included in the record. Accordingly, we cannot consider it in our review of the circuit court's decision. *Rodriguez v. Arkansas Dep't of Human Servs.*, 360 Ark. 180, 200 S.W.3d. 431 (2004).

Finally, we note that this case has gone on for over four years. Such a delay goes against the clear legislative intent of the termination-of-parental-rights statute, which specifically states:

> The intent of this section is to provide permanency in a juvenile's life in all instances where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.

Ark. Code Ann. § 9-27-341(a)(3). While the delay in the instant case may be partially attributable to our recent adoption of the *Anders*

procedures in cases of indigent-parent appeals, we are mindful that the appellate review and disposition of this case is long overdue. The need to expedite appeals in termination-of-parental-rights cases is of the utmost importance. In that regard, we have requested that our court's Ad Hoc Committee on Foster Care and Adoption make recommendations for changes in the court's rules of appellate procedure.

Parent-counsel's motion to be relieved is granted and the circuit court's order terminating parental rights is affirmed.