Jamie LONG *v.* ARKANSAS DEPARTMENT of HEALTH
& HUMAN SERVICES, and K.L. and M.S., Minor Children

06-796                                                    250 S.W.3d 560

Supreme Court of Arkansas
Opinion delivered February 22, 2007

*DeeNita D. Moak*, for appellant.

*Gray Allen Turner*, for appellee Arkansas Department of Health
& Human Services.

*Tjuana Cynese Byrd*, attorney ad litem for the minor children.

Tom Glaze, Justice. This termination-of-parental-rights
case comes to us by petition for review. Appellant Jamie
Long appeals from an order terminating her parental rights of her two
children, her daughter, K.L., and her son, M.S. Each child has a
different biological father. K.L.'s father is Kenneth Langston, and
M.S.'s father is Miguel Sanchez. The Arkansas Department of Health
and Human Services (DHHS) filed a petition for termination of
parental rights against Jamie, Langston, and Sanchez. The circuit court
entered an order terminating the parental rights of Jamie and both
biological fathers. Jamie appealed that order, and her only argument is
that there is insufficient evidence. The court of appeals reversed the
circuit court's termination order, agreeing with Jamie that there was
insufficient evidence to support the circuit court's order. We affirm
the circuit court's order and reverse the court of appeals' decision.

The children were originally taken into DHHS custody on
March 3, 2003, when Jamie was arrested and charged with
possession of drugs and drug paraphernalia and two counts of

endangering the welfare of a minor. The circuit court immediately issued an emergency order on March 3, the same day of the arrest, granting DHHS temporary custody of the children. Just seven days later, on March 10, the circuit court entered a probable-cause order, finding that there was still probable cause to remove the children from Jamie's custody. At that time, Jamie was not given visitation rights, because she was incarcerated at the Pulaski County Regional Detention Facility. The circuit court then scheduled an adjudication hearing for April 25, 2003, wherein the circuit court again determined that it was in the children's best interest for them to remain in DHHS custody. In addition, the circuit court warned that a permanency-planning hearing would be held on February 27, 2004, at which time the court would determine permanent living arrangements for the children. In its order, the court encouraged Jamie to comply with all the court's directions in order to make progress toward reunification. The court set another review hearing for July 25, 2003. In a review order, filed August 13, 2003, the circuit court indicated that, as of the July 25 review hearing, returning the children to Jamie would not be in their best interest. The circuit court also stated the following in its order:

5. If the mother fails to appear for one more appointment for her psychological evaluation, the mother will pay for any psychological evaluation that she undergoes.

6. [DHHS] has made reasonable efforts to provide services to work toward the goal of reunification with the mother. Services include: a foster home, casework services, transportation, educational services, medical services, visitation, specialized day care, a referral for mom to have a psychological evaluation, a drug and alcohol assessment and random drug screen.

7. Mom has not complied with all the court orders and the case plan services. She has not had a psychological evaluation, she has not completed parenting classes, she no longer attends NA/AA meetings at Celebrate Recovery. Mom did have a drug and alcohol assessment, has had some visitation and some random drug screens. Mom continues to bring people to her visitation although [DHHS] has told her not to do so. Mom arrives late for visits without calling to indicate that she will be late.

The court held yet another review hearing on October 30, 2003, at which Jamie informed the court that she had been living in Georgia

for two months. After that hearing, the circuit court entered another foster-care-review order on November 18, 2003. The court, in that order, stated:

> 3. The court advised Mom that the clock is ticking. Mom has not complied with all the court orders and case plan services. Mom still needs to complete parenting classes, continue intensive substance abuse treatment, visit the children regularly, have random drug screens as set up by [DHHS], have a stable home and employment and demonstrate she can properly provide for her kids.
>
> 4. Mom has not visited the kids since September 8, 2003. Mom needs to prove that her children are her priority. [DHHS] will assist the mother with reunification services if she returns to Arkansas.

On February 26, 2004, after the children had been in DHHS's custody for almost a year, the court held a permanency-planning hearing. At this time, Jamie showed signs of progress toward reunification. She had returned home from Georgia, had completed parenting classes, had visited the children, and had tested negative on a recent drug screen. In fact, the circuit court noted in its order that Jamie was living with her sister and allegedly was working regularly at McDonald's. Despite that progress, however, the circuit court noted that Jamie had not completed outpatient drug treatment, nor had she been attending regular Narcotics Anonymous/Alcoholics Anonymous (NA/AA) meetings. Still, based on Jamie's level of improvement at that time, the circuit court continued with the goal of reunification. After that hearing, Jamie was given unsupervised weekend visitation, but those privileges were suspended when Jamie failed to return the children on time.[1]

The circuit court held another permanency-planning hearing in May 2004. After a three-month grace period from the last permanency-planning hearing, the circuit court discovered that Jamie was still not attending NA/AA meetings. Moreover, she still could not provide the court with documentation that she had received outpatient-drug treatment, she missed a drug screening, and, since the last hearing, she had only visited the children three times. In a subsequent order, the court explained that the case had

---

[1] Jamie's explanation for being late was that she had been hospitalized, but she never provided proof of such hospitalization to the circuit court.

been thoroughly reviewed at the hearing, and it found that it was in the children's best interest that the permanency goal be changed from that of reunification to that of adoption, "which can be achieved by a termination of parental rights petition being filed and the court holding an adjudication on that petition." Even though the court set a termination hearing, however, the court explained that if Jamie made progress in between then and the termination hearing, this order was not a "death knell" to her.

As expected, DHHS filed a petition for the termination of parental rights. The circuit court held the termination hearing on September 15, 2004. At that hearing, evidence was presented that Jamie had recently tested positive to propoxyphene (Darvon), she missed a scheduled drug screen, and she tested positive for opiates in August. The circuit court, in a long, detailed, seven-page order, concluded that termination of Jamie's parental rights was appropriate and granted DHHS's petition. From this order, Jamie timely appeals. As stated earlier, the court of appeals, in a 4-2 decision, reversed the circuit court's order of termination, concluding that there was insufficient evidence to terminate Jamie's parental rights. We disagree and affirm the circuit court.

The sole issue on appeal is whether there is insufficient evidence to support the circuit court's determination that Jamie should have her parental rights of her two children terminated. Under Ark. Code Ann. § 9-27-341 (Supp. 2005), a circuit court may terminate parental rights if the court finds that there is an "appropriate permanency placement plan for the juvenile" and finds by clear and convincing evidence:

> (A) That it is in the best interest of the juvenile, including consideration of the following factors:
>
> (i) The likelihood that the juvenile will be adopted if the termination petition is granted; and
>
> (ii) The potential harm, specifically addressing the effect on the health, and safety of the child, caused by continuing contact with the parent, parents, or putative parent or parents; and
>
> (B) Of one (1) or more of the following grounds:
>
> (i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve

(12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

(b) It is not necessary that the twelve-month period referenced in subdivision (b)(3)(B)(I) of this section immediately precede the filing of the petition for termination of parental rights or that it be for twelve (12) consecutive months.

Ark. Code Ann. § 9-27-341(b)(1)(a), (b)(3)(A) & (B)(i)(a), (b); *see Linker-Flores v. Ark. Dep't of Human Servs.*, 364 Ark. 224, 217 S.W.3d 107 (2005). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Linker-Flores*, 364 Ark. at 229, 217 S.W.3d at 112. When the burden of proving a disputed fact is by clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Such cases are reviewed de novo on appeal. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999).[2] In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* In the instant case, the circuit court found that there was ample evidence to meet all the above-cited statutory requirements for termination. This court is not left with a definite and firm conviction that the circuit court made a mistake.

A review of the termination hearing reveals the relevant testimony of several witnesses. Jim Pfeiffer, a certified drug-abuse therapist, testified that, during Jamie's incarceration in May 2003, he performed a drug and alcohol assessment on her. His report indicated that her drug of choice was hydrocodone, but she had previously used methamphetamine (four or five times) and marijuana (one time). Jamie, at that time, estimated to Pfeiffer that she took around four to five hyrodocone pills a day for five years. In his

---

[2] Notably, the circuit court, in its termination order, did not take judicial notice and incorporate by reference into the record all pleadings and testimony in the case that occurred before the termination-of-parental-rights hearing. The circuit court, however, *did* take judicial notice of its prior orders issued in this case. Thus, our review of the case preceding the termination hearing is limited to the circuit court's prior orders.

evaluation, Pfeiffer reported that Jamie stated that she did not need treatment for her drug problem because she had not experienced cravings since her incarceration.

Additionally, at the termination hearing, Forensic Psychologist Paul DeYoub, Ph.D., reviewed his assessment of Jamie's psychological evaluation. He indicated that Jamie had missed three appointments before she actually made it to his office for the evaluation. He stated that she had an admitted drug problem, more so with prescription pills than any other drugs. According to Dr. DeYoub, Jamie was also involved in a relationship with a man named Mario Cirilo, who was given a top priority in her life. In fact, she stated in the interview that after the case was over she intended on marrying him. Dr. DeYoub, after his evaluation, diagnosed Jamie with Personality Disorder NOS [not otherwise specified] because she had traits of several different personality disorders. More importantly, he concluded that she had a drug-abuse problem, and he indicated that Jamie was certainly at risk for continued drug use.

Jan Kucala, K.L.'s counselor, testified she observed family progress during her counseling sessions with K.L. She stated that K.L. had bonded to her mother, and there was a chance that K.L. would regress if Jamie's rights were terminated. However, Kucala noted K.L.'s need for stability and did not recommend immediate reconciliation with Jamie; instead, she recommended that Jamie be given more time to become stable.

Jamie testified that she was currently employed by her father, earning about $200 a week for taking care of her aged grandmother. She explained that, while she had previously maintained employment at McDonald's, she was pregnant with her third child and working at McDonald's while pregnant became too difficult. Moreover, she contended that she was moving from a one-bedroom apartment to a larger one in the very near future — one that would be more suitable for her children. With respect to her drug-abuse problem, Jamie maintained that she had been seeking treatment with the UAMS Adult Psychiatry Department, but she failed to provide proof of her treatment there. Jamie also stated that she attended Celebrate Recovery at a local church, and she was unaware that it was not in line with the recommendation for intensive outpatient treatment.

Finally, Tamika Floyd, one of Jamie's DHHS caseworkers, informed the court of her lack of compliance with the case plan. In short, Floyd attested that (1) with respect to the positive drug

screen, Jamie had not provided her with proof of prescription medication, (2) she never saw proof that Jamie had completed drug treatment, and (3) Jamie never provided her proof of employment while at McDonald's. In fact, the only proof of employment that Jamie provided, according to Floyd, was a letter from Jamie's father on the day of the termination hearing. Moreover, despite Jamie's claim that she had put the additional money down to move into the larger apartment, Floyd testified that when she called the apartment complex on the day before the hearing, she had yet to put down a deposit or transfer her lease. Finally, Floyd testified that since her case was open, Jamie had not "had a period of being stable."

Jamie's argument, in sum, is that she "substantially complied with the orders of the trial court and corrected the problems that caused removal of her children; therefore, her parental rights should not have been terminated." In other words, she maintains that the record reveals that she complied with the circuit court's order, and, thus, termination of her parental rights was not appropriate. Yet, the record reveals numerous instances where Jamie failed to comply with orders mandated by the circuit court. Of utmost concern is that Jamie never provided evidence to the circuit court that she had remedied her drug problem — the very reason for the children's initial removal. For instance, Jamie never provided evidence of drug treatment, regular attendance at NA/AA meetings, and, even though she claimed that the positive drug screen was a result of properly prescribed medications, Jamie failed the drug test taken prior to the termination hearing.

Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Linker-Flores v. Ark. Dep't. of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). However, parental rights should not be allowed to continue to the detriment of the child's welfare and best interest. *Id.* Here, because the evidence shows that Jamie failed to address her problems with drug abuse, failed at providing any meaningful proof of employment, and refused to establish proof of a stable living environment for her children, we affirm the circuit court's order terminating her parental rights.

Affirmed.

Court of Appeals Reversed.