2011 Ark. App. 280

**Heidi HARPER, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 10–1204.**

Court of Appeals of Arkansas.

April 13, 2011.

Deborah Ruth Sallings, Little Rock, for appellant.

WAYMOND M. BROWN, Judge.

$|_1$This is a no-merit appeal from an order terminating Heidi Harper's parental rights to her two children, J.R. and J.H. Following the dictates of Arkansas Supreme Court and Court of Appeals Rule 6–9(i) and *Linker–Flores v. Arkansas Department of Human Services*,[1] Harper's attorney has filed a brief explaining why an appeal would be wholly without merit. Our clerk's office sent a copy of counsel's brief and a letter explaining her rights to Harper twice, but the package was returned both times. Accordingly, there are no pro se points to consider. After reviewing counsel's brief and the record, we agree that an appeal would be wholly without merit. Therefore, we affirm the order terminating Harper's parental rights and grant counsel's motion to withdraw from representation.

$|_2$Our rules allow an attorney who believes that his or her client has no meritorious basis for an appeal to file a no-merit petition and motion to withdraw.[2] Counsel's no-merit petition must include an argument section that lists all adverse rulings to the appellant and an explanation why each adverse ruling is not a meritorious ground for reversal.[3] If counsel fails to address all rulings adverse to her client, we generally order rebriefing.[4] In no-merit termination cases, however, we retain the option of affirming and granting counsel's motion to withdraw if it is clear that there is no meritorious argument for

1. 359 Ark. 131, 194 S.W.3d 739 (2004).

2. Ark. Sup.Ct. R. 6–9(i)(1).

3. Ark. Sup.Ct. R. 6–9(i)(1)(A).

4. *Causer v. Ark. Dep't of Human Servs.*, 93 Ark. App. 483, 220 S.W.3d 270 (2005).

reversal.[5]

The Arkansas Department of Human Services (DHS) removed the children from their parents' care in April 2008 after a referral from Arkansas Children's Hospital. The investigation revealed inadequate supervision and medical neglect. The circuit court found probable cause to remove the children from their parents, and it adjudicated the children dependent-neglected in June 2008 due to drug abuse, domestic violence, and mental-health issues. Among other things, Harper was ordered to submit to a psychological evaluation and complete any recommended counseling, complete the residential drug treatment recommended by the drug/alcohol assessment, and submit to regular drug screenings. In September 2008, the court held a review hearing to address Harper's desire not to complete residential drug treatment as recommended by the drug and alcohol assessment. The court found that Harper was in need of treatment and ordered her to complete the program offered by DHS.

The goal of the case was initially reunification with the parents, but as the case progressed, neither parent fully complied with the case plan. In November 2008, the court added the concurrent goal of adoption and termination of parental rights. The father's rights were terminated in February 2010 (this appeal does not address his rights), and the court held a hearing to terminate Harper's rights in August 2010.

The record shows that Harper never adequately addressed her drug problems. In June 2008, Harper completed a substance-abuse evaluation at Gateway House, which recommended that she complete residential treatment. Gateway told DHS that Harper needed a referral to a detox facility, so DHS sent Harper to South Arkansas Substance Abuse Center for detox and residential treatment. South Arkansas was able to get Harper medically stable enough for drug-rehabilitation treatment. Harper returned to Gateway, but she left without completing treatment and against medical advice. While there, she denied that she was a drug addict and claimed that her problems were emotional. DHS referred Harper to South Arkansas again in November 2008. She went to the facility but refused to stay for treatment. Harper later completed residential treatment at Gateway in May 2009.

Several medical records were introduced into evidence. Dr. Robert Ross was at one time her primary care physician. In a note dated May 3, 2010, he wrote that Harper was "manipulative" and had "demanding drug seeking behavior." On July 8, 2010, he wrote, "Wants med for Add. *No!*" Dr. Ross eventually stopped seeing Harper as a patient. Harper also sought pain medication for an abscessed tooth in May, April, July, and August 2010. Her dentist eventually told her that he would not give her any more refills until she was seen in the office. In July 2010, she was admitted into Sparks Regional Medical Center, where she was diagnosed with depression and drug abuse. She was heard on the phone asking people to bring her pills, and she yelled at doctors and hospital staff there. She was transferred to Baptist Medical Center, but she left against medical advice. When she left Baptist, she went to St. Vincent. According to records, she went there to get Xanax and stimulants. She denied drug abuse, but doctors opined that "there is clearly some prescription medication abuse at play."

5. *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877 (contrasting no-merit appeals in the criminal context versus no-merit appeals in dependency-neglect cases).

Despite being confronted with her medical records at the termination hearing, Harper continued to insist that she was not a drug addict, and she claimed that the records were incorrect. At one point, she described herself as dependent upon benzodiazepines and opiates "in the same way that an insulin dependent diabetic is dependent on their insulin."

In support of her case, Harper called two other witnesses. First, she called Harold Hayden, who conducts drug and alcohol assessments for Decision Point. He performed a substance-abuse evaluation of Harper in February 2010 and concluded that she had no substance-dependence disorder. But he did not have any of her medical records when he performed the evaluation, and his report was based on Harper's self-reporting. Harper did not share with Hayden any of the court orders to complete treatment or the court's previous finding that she was a drug addict. On cross-examination, he stated that it would make a difference in his opinion if Harper had medical records showing that doctors would no longer prescribe narcotics to her.

Harper also relied on testimony from Dr. Brent Bolyard, who started seeing Harper as a patient in May 2010. Dr. Bolyard's initial diagnosis was of post-traumatic stress disorder, but he had not made an official diagnosis because he did not have all of her medical records. He had not diagnosed Harper as a drug addict. But on cross-examination, he testified that he had not been given a lot of information. For example, he was not told that she had received a prescription for Xanax less than two weeks prior to her first visit with him. He did not know that another doctor had refused to prescribe her any more drugs or that she had previously been diagnosed with depression and drug abuse. Dr. Bolyard also noted that he increased Harper's Clonazepam dosage in July 2010 from one milligram to two milligrams. He did not know that, the day before that visit, she had received a prescription for one-milligram Clonazepam and ran it through Medicaid. He stated that, had he known about that prescription, he would have simply advised her to double-up on those pills, and he would have given her a prescription to get through the rest of the month. (Harper had testified that she had flushed the one-milligram tablets down the toilet.)

Despite Harper's compliance with other aspects of the case plan, case worker Robin McKay recommended termination of parental rights. She testified that she had found people willing to adopt the children, and she noted that Harper refused to admit that she was a drug addict. McKay thought that Harper's abuse of prescription medication would put the children at risk of harm because it would render her unable to meet the immediate needs of the children. Harper had missed about half of the visitation periods, mostly due to the inability to have a negative drug screen.

After hearing testimony and arguments from counsel, the court terminated Harper's parental rights. While it acknowledged that Harper complied with several aspects of the case plan, it concluded that she never resolved her dependence on prescription drugs. Though Harper denied having a problem, the court found her not to be credible. It also thought that the discharge summary from her stay at St. Vincent's summed up the case: "I [her treating physician] attempted to discuss with the patient her prescription drug habits. However, she is not amenable to doing so and is insistent that there is not a problem, despite the fact that she now has multiple providers indicating that this is the case."

An order terminating parental rights must be based upon a finding by clear and

convincing evidence that termination of a parent's rights is in the best interest of the children, considering the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm caused by returning the children to the custody of the parent.[6] The court must also find one of the grounds outlined in the termination statute.[7] The relevant ground here is outlined at Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(a):

That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite |7a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

■■■ Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents, but courts are not to enforce parental rights to the detriment or destruction of the health and well being of a child.[8] A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence.[9] Clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction regarding the allegation sought to be established.[10] When the burden of proving a disputed fact is by clear and convincing evidence, this court reviews the circuit court's findings under the clearly erroneous standard.[11] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[12] Such cases are reviewed de novo on appeal, but appellate courts give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses.[13]

■■■ |8Any appeal from the decision to terminate Harper's parental rights would be wholly without merit. Adoptability of the children is not an issue, given McKay's testimony that families were prepared to adopt them. And the record is clear that Harper had a problem abusing prescription drugs and refused to acknowledge it.[14] This evidence is sufficient proof that termination was in the children's best interests and that there is a statutory ground for termination.

The record also contains a number of minor evidentiary objections. In the argument section of her brief, counsel has listed those rulings adverse to her client and explained why none of them present a meritorious ground for reversal. After reviewing the record and counsel's brief, we

6. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl. 2008).

7. Ark.Code Ann. § 9–27–341(b)(3)(B).

8. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006).

9. *Id.*

10. *Id.*

11. *Williams v. Ark. Dep't of Health & Human Servs.*, 99 Ark. App. 95, 257 S.W.3d 574 (2007).

12. *Id.*

13. *Id.*

14. *Long v. Ark. Dep't of Health & Human Servs.*, 369 Ark. 74, 250 S.W.3d 560 (2007) (stating that the failure to address the problems of drug abuse, which led to the children being removed from the home, supported the finding that returning the children to her was not in the children's best interests).

agree that an appeal from these rulings would be wholly without merit.

Counsel has complied with the dictates of *Linker–Flores* and the rules of this court. Accordingly, we affirm that order and grant counsel's motion to withdraw from representation.

Affirmed; motion to withdraw granted.

VAUGHT, C.J., and GRUBER, J., agree.