2012 Ark. App. 209

**Mika CHENEY and Jason Cheney, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 11–1080.**

Court of Appeals of Arkansas.

March 14, 2012.

Tabitha Baertels McNulty and Deborah Ruth Sallings, Little Rock, Janet Renee' Lawrence, Conway, for appellant.

Keith L. Chrestman, Jonesboro, for appellee.

ROBIN F. WYNNE, Judge.

Mika and Jason Cheney both appeal from the Crittenden County Circuit Court's order terminating their parental rights to their children, S.C., J.C., and D.C. Mika's counsel has filed a motion to withdraw that is accompanied by a brief filed pursuant to Arkansas Supreme Court Rule 6–9 and *Linker–Flores v. Arkansas Department of Human Services (I)*, 359 Ark. 131, 194 S.W.3d 739 (2004). Jason's counsel has filed a merit brief. We affirm the circuit court's termination order as to both appellants and grant the motion to withdraw filed by Mika's counsel.

The Arkansas Department of Human Services (DHS) filed a petition for emergency order regarding S.C., J.C., and D.C. on May 20, 2009. The affidavit from a family-service worker that accompanied the petition states that on May 18, 2009, Mika was arrested for possession of controlled substances, driving on a suspended license, and endangering the welfare of a minor. Mika admitted using methamphetamine a "couple of days" prior. The children appeared dirty, and their diapers were soiled. Jason was contacted and denied any knowledge of Mika's drug use or any drug use himself; a drug screen of Jason was negative. The affidavit further states that J.C. was born in 2006 with cocaine and marijuana in his system and that D.C. was born in 2007 with cocaine and amphetamines in her system. DHS opened a case on the family in 2008, and the case was still open at the time the affidavit was executed. On May 22, 2009, the circuit court entered an ex parte order in which it continued custody of the children with Mika and Jason; ordered Mika to complete a drug/alcohol assessment and submit to random drug screens; and ordered both parents to, among other things, make sure the children were properly supervised, obtain and maintain stable housing and employment, notify DHS of address or phone number changes, and follow a safety plan for the children developed by DHS.

On August 3, 2009, DHS filed an amended petition for emergency custody and dependency-neglect. The affidavit that accompanied the amended petition states that during a weekly home visit on July 27, 2009, both Mika and Jason tested positive for methamphetamine, resulting in DHS taking a seventy-two-hour hold on the children. The circuit court filed an order on August 3, 2009, placing the children in DHS custody.

The circuit court entered an adjudication order on October 13, 2009, in which it adjudicated the children dependent-neglected based upon a stipulation by the parents that the facts in the August 3, 2009 affidavit were true. The order states that the goal of the case was reunification. Both Mika and Jason were ordered to submit to random drug screens and remain drug free; maintain stable housing and employment or legal income; notify DHS of telephone number or address changes and allow DHS to perform home visits; and cooperate with the Department of Children and Family Services (DCFS) and comply with the case plan during the pendency of the case.

In a review order entered on December 29, 2009, the circuit court continued custody of the children with DHS and continued reunification as the goal of the case. The parents were again ordered to perform all of the tasks set out in the adjudication order and were additionally ordered to attend all visitation sessions with the children and to submit to psychological testing. In another review order entered on March 11, 2010, the court continued the children in DHS custody and continued reunification as the goal of the case. The earlier requirements for Mika and Jason continued, along with a requirement that they enter and complete drug treatment. The circuit court also found that neither Mika nor Jason had substantially complied with the court's previous orders or the case plan.

In a report to the circuit court dated June 18, 2010, the Court Appointed Special Advocate (CASA) volunteer assigned to the case stated that Mika and Jason missed almost three months' worth of visitations with the children. The volunteer also stated that Jason was arrested on April 23, 2010, and charged with manufacturing crystal methamphetamine, manufac-

turing methamphetamine in the presence of a child, possession of drug paraphernalia, possession of a controlled substance with intent to sell, possession of a firearm by a convicted felon, and simultaneous possession of drugs and firearms.

A permanency-planning hearing was held on July 1, 2010. In the ensuing order, the circuit court continued the children in DHS custody and stated that the goal of the case was reunification with Mika. The circuit court also found that DHS made reasonable efforts to finalize a plan for reunification, that Mika had substantially complied with the previous orders and case plan, and that Jason had not complied with the previous orders or the case plan. After a fifteen-month review hearing on October 21, 2010, the circuit court entered an order in which it changed the primary goal of the case to termination of parental rights with a concurrent goal of adoption. The order from the hearing was entered on January 6, 2011. The court found that DHS made reasonable efforts toward reunification; however, despite those efforts, Mika had not maintained stable employment and Jason had not maintained stable housing, employment, or income.

DHS and the children's attorney ad litem filed a joint petition for termination of parental rights on March 2, 2011. Mika did not appear for the hearing on the petition. At the hearing, Andrea Sias, a family-services worker with DHS, testified that during the case, Mika had eight positive drug screens and Jason had ten positive drug screens. Ms. Sias testified that since his arrest, Jason had not been able to comply with the case plan and that he did not have stable housing or employment. According to Ms. Sias, Mika had last visited the children on October 21, 2010, and had missed eight visits since that time.

Jason missed four months of visitation and had last visited the children on January 14, 2010; since that time he had not had any contact with the children, nor had he sent anything to DHS for the children. Jason paid child support in January, February, and March 2010. Ms. Sias's last contact with Mika prior to the termination hearing was on October 21, 2010. Ms. Sias recommended that parental rights be terminated due to the lack of a stable environment for the children. Ms. Sias admitted on cross-examination that Jason had not been offered any services since his incarceration; however, she also stated that DHS does not offer services to persons who, like Jason, are incarcerated in the state penitentiary. Margaret Miller, an adoption specialist with DHS, testified that she believed the children were adoptable.

Jason testified that he pled guilty to residential burglary in 2008. As a result of his plea, he was placed on probation for a period of sixty months. In April 2010, Jason violated his probation when he was arrested. Jason's probation was revoked, and he was incarcerated at the time of the hearing.[1] Jason pled guilty to possession of a controlled substance with intent to manufacture in March 2011, and was placed on probation for ninety months, with a presumptive sentence of between 120 months' and 480 months' imprisonment if he violated his probation. Jason also testified that he was in a voluntary substance-abuse treatment program. He stated that his release date was January 3, 2012, that he would be paroled to his uncle's house, and that his former employer told him to contact them when he got released. Jason admitted on cross-examination that he was not guaranteed to be paroled in January 2012. Jason also stated that he had attempted to maintain con-

---

1. After his probation was revoked, Jason received a 120–month prison sentence.

tact with the children, who were placed with his cousin at the time of the hearing. He asked the court to give him four more months to get out of prison and get a job.

On August 9, 2011, the trial court entered an order terminating Mika and Jason's parental rights. The circuit court found that Mika had not visited the children since October 21, 2010, save for a DHS Christmas party in December 2010, and that Jason had not visited the children since January 14, 2010. The circuit court determined that termination of parental rights was in the children's best interests because the children were adoptable, there would be a substantial risk of potential harm if the children were returned to the parents, Mika's whereabouts were unknown, Mika had no stable housing, and Jason was serving a 120–month sentence in the state penitentiary and could not provide stable housing for the children. The circuit court found that DHS proved that the children continued out of the home for a period of twelve months and, despite meaningful efforts by DHS to rehabilitate the home and correct the conditions that led to the removal, the conditions had not been remedied. The circuit court also found that DHS proved that, subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrated that the return of the children to the family home was contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate their circumstances, which prevented the return of the juveniles to the family home. Those subsequent factors included Mika's neglect and abandonment of the children by having no contact with them since December 2010, Jason's 120–month prison sentence, and the fact that both parents tested positive for illegal drugs throughout the case. Jason submitted a timely appeal. Due to the inability of her counsel to locate her within the prescribed time for filing an appeal, Mika requested and was granted permission to file a belated appeal.

We review termination of parental rights cases de novo. *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227. The grounds for termination of parental rights must be proved by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

We will address Mika's no-merit appeal first. In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup.Ct. R. 6–9(i)(1) (2011). The petition must include an argument section listing all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explaining why each adverse ruling is not a meritorious ground for reversal. Ark. Sup.Ct. R. 6–9(i)(1)(A). The petition must also include an abstract and addendum containing all rulings adverse to the appellant made at the hearing from which the order on appeal arose. Ark. Sup.Ct.

R. 6–9(i)(1)(B). After Mika's counsel filed a brief and motion to withdraw, the clerk of this court attempted to send her a copy of the brief and motion to withdraw along with a letter informing her of her right to file pro se points pursuant to Arkansas Supreme Court Rule 4–3(i)(3). The packet was returned unclaimed by the post office.

Mika's counsel asserts that there would be no merit to a challenge to the sufficiency of the evidence to support the termination. We agree. A circuit court may terminate parental rights if the court finds by clear and convincing evidence that termination is in the child's best interest, considering the likelihood that the child will be adopted and the potential harm the child would suffer if returned to the parent's custody; and finds by clear and convincing evidence that at least one statutory ground for termination exists. *Fields v. Ark. Dep't of Human Servs.*, 104 Ark.App. 37, 43, 289 S.W.3d 134, 138 (2008). In the instant case, the circuit court found that two grounds for termination existed: 1) that the children had been out of the home for a period of twelve months and the conditions that led to the removal had not been remedied and 2) that subsequent factors or issues arose after the filing of the petition for dependency-neglect that demonstrate that returning the children to the parent was contrary to their welfare. The children were brought into DHS custody due to drug use by Mika and Jason. Although Mika made efforts to comply with the case plan at times, she continued to test positive for drugs during the case. As her counsel notes, Mika failed to appear for the termination hearing, depriving the circuit court of the opportunity to determine whether her drug-use issues, which led to the removal of the children, had been resolved.

There was sufficient evidence to show that termination was in the children's best interest. An adoption specialist with DHS testified that the children were adoptable. There was also evidence that the children would be subjected to potential harm if returned to Mika's custody. As noted above, the status of her drug issues was undetermined. There was no evidence before the circuit court that Mika had either employment or appropriate housing for the children. A challenge to the sufficiency of the evidence to support the termination of Mika's parental rights would be without merit.

Mika's counsel has identified several rulings adverse to her during the termination hearing in addition to the decision to terminate. The first ruling was the circuit court's decision to admit DHS's court report. Evidentiary rulings by a trial court are reviewed for abuse of discretion. *Sparkman v. Ark. Dep't of Human Servs.*, 96 Ark.App. 363, 242 S.W.3d 282 (2006). Andrea Sias, the worker who prepared the report, testified and was cross-examined by Mika's trial counsel. Ms. Sias essentially testified to all of the contents of the report, so, at most, the report was cumulative. Because the contents of the report were included in Ms. Sias's testimony, Mika would not be able to demonstrate prejudice from the admission of the report, and we will not reverse without a showing of prejudice, as prejudice is not presumed. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149, 2012 WL 474807.

Mika's counsel next identifies several rulings on hearsay objections that were adverse to Mika. Mika objected when the caseworker testified that Mika was asked to leave drug rehabilitation and when the caseworker testified that Mika did not have a driver's license; however, the caseworker obtained that information from Mika herself, placing the testimony within the hearsay exception for state-

ments by a party-opponent. Ark. R. Evid. 801(d)(2) (2011).

 Mika also objected to testimony by the caseworker that she had another child during the case. DHS successfully argued to the circuit court that the evidence was relevant $\lfloor_{10}$regarding Mika's stability, which is a core issue in a termination proceeding. As the child was never mentioned again, we see no ground for appeal from the ruling. Mika also objected to the admission of Jason's criminal record. However, as her counsel notes, she had no standing to object to this evidence, and none of the evidence was prejudicial to her.

 During the adoption specialist's testimony, the specialist started to reveal the county in which a prospective adoptive placement lived. The ad litem objected, and Mika argued that the objection was tardy. The circuit court noted that the location of the family was already in the record. Also, as Mika's counsel notes, the location of the family is not relevant to the termination proceeding. Finally, Mika objected to a statement by the ad litem during closing arguments that indicated Mika did not care about the children. The circuit court overruled the objection, stating that the statement by the ad litem was a reasonable inference under the facts. Given the undisputed testimony that Mika missed many visitations with the children and was not even present during the termination hearing, we see no meritorious issue on appeal from the circuit court's ruling.

 There is one adverse ruling that Mika's counsel abstracted but does not discuss in the brief. During cross-examination of Ms. Sias, Mika's counsel asked Ms. Sias if she understood any reasons why Mika suddenly began falling back into drug use. Counsel for DHS objected on

the basis that the question called for speculation. The circuit court ultimately sustained the objection; however, Ms. Sias went on to answer the question, responding that she did not talk to Mika about that issue. Although the circuit court's sustaining of the objection is technically an adverse ruling, the ruling was not enforced because Ms. Sias was allowed to answer the $\lfloor_{11}$question. Nevertheless, our supreme court has held that the failure to abstract or discuss every adverse ruling does not prohibit us from granting counsel's motion to withdraw and affirming a termination order, when the rulings clearly did not constitute reversible error. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005); *contra Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877 (holding that any such omissions in a criminal no-merit brief require rebriefing by the appellant's counsel). The adverse ruling that Mika's counsel fails to discuss clearly does not constitute reversible error. The termination order is affirmed as to Mika, and her counsel's motion to withdraw is granted.

 In his merit brief, Jason's first argument is that DHS did not make meaningful and reasonable efforts to rehabilitate him because he was not offered services while he was in prison. DHS and the attorney ad litem argue on appeal that Jason waived this argument due to his failure to appeal from either the permanency-planning order or the fifteen-month-review order in which reasonable-efforts findings were made by the circuit court. The permanency-planning order, which was not appealed, states that Jason will only be allowed visitation with the children by letter or mail while incarcerated. The language in the order regarding visitation indicates that Jason was incarcerated at the time the permanency-planning order was entered. Jason's argument on appeal

is that DHS failed to make reasonable efforts to provide him with services during his incarceration. Because Jason failed to challenge the reasonable-efforts finding in the permanency-planning order, he has waived the issue for purposes of appeal. *See Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 526, 385 S.W.3d 373.

Even if the argument were preserved, it would still fail. Jason does not cite any specific services that DHS should have or even could have provided for him while he was incarcerated. At the termination hearing, he did not request that he be given more services; he only requested that the circuit court give him more time to get out of prison. He argues that he was ordered by the circuit court to visit with the children and was not allowed visits while incarcerated. His argument ignores the testimony at the termination hearing that he failed to visit with the children before he was incarcerated. His argument likewise ignores the fact that the permanency-planning order, which, again, was not appealed, only grants him mail visitation with the children while he is incarcerated. He also argues in his brief that he had arranged employment upon his release from prison. However, his testimony at the hearing was that his former employer told him to call after he was released. Jason's argument is without merit.

 Appellant's second point on appeal is that termination was not in the children's best interest. He argues that his rights should not be terminated solely because he is incarcerated. What he fails to mention in his argument is that he was sentenced to prison for ten years. He believed at the time of the termination hearing that he would be released within four months but admitted on cross-examination that this was not certain. More-over, his incarceration was not the sole reason for the termination. The children were taken into custody by DHS due to drug use by Jason and Mika, and Jason pled guilty to a drug-related offense during the case. In combination with the testimony that he had multiple positive drug screens, this calls into question whether he would be capable of living a drug-free life once released from prison. Thus, the circuit court's finding that the children would suffer potential harm if returned to Jason is not clearly erroneous. The circuit court's termination order is affirmed as to Jason.

Affirmed; motion to withdraw granted.

PITTMAN and HOOFMAN, JJ., agree.