Cite as 2020 Ark. App. 248

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-19-948

| | |
|---|---|
| MORGAN ADAME AND JEREMY ADAME | **Opinion Delivered:** April 22, 2020 |
| APPELLANTS | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58JV-18-69] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE KEN COKER, JR., JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BART F. VIRDEN, Judge

Jeremy Adame's and Morgan Adame's parental rights to MA (12/7/16) and JA (2/15/18) were terminated in two orders entered by the Pope County Circuit Court. Jeremy appeals the termination of his parental rights, asserting that he was denied his right to counsel and that the best-interest finding of the court is clearly erroneous. Morgan filed a no-merit appeal, and her counsel filed a motion to withdraw. We affirm the termination of Jeremy's and Morgan's parental rights and grant the motion to withdraw.

I. *Relevant Facts*

On June 7, 2018, the Arkansas Department of Human Services (the Department) filed a petition for emergency custody and dependency-neglect regarding MA and JA. Jeremy, who was incarcerated at the time, was identified as the putative father. The affidavit attached to the petition set forth the following reasons for the removal of the children from

Morgan's custody. On June 5, 911 dispatch contacted the Division of Child and Family Services for assistance in a suspected case of environmental neglect and threat of harm. As officers from the Russellville Police Department approached Morgan's room at the Budget Inn motel, a man possessing a hypodermic needle and methamphetamine was leaving the room. Officers entered the room and saw Morgan and her two children, as well as two men who were passed out on the bed. Morgan was not under the influence of drugs at that time but admitted that she had used drugs with her children present two days before. Morgan was arrested and charged with possession of Schedule I or II controlled substance, two counts of endangering the welfare of a minor, failure to appear, and parole violation. A hypodermic needle was found in a bag containing the children's belongings.

An ex parte order for emergency custody was entered on June 7. The court found probable cause to believe that the children were dependent-neglected, and it was contrary to the children's welfare for them to remain in Morgan's custody. Jeremy was not listed in the style of the order or referred to in the body of the order. The order set forth that parents and legal guardians are entitled to an attorney at each stage of the proceeding and that the parent from whom physical custody was removed, if indigent, would be appointed an attorney. The court made a preliminary finding of indigency and appointed an attorney to Morgan.

The court held a probable-cause hearing, and the subsequent order was entered on June 11. Again, Jeremy was not listed in the style of the order; however, he was acknowledged as "father" in the list of those who could have been present at the hearing.

Jeremy was not designated present and was not ordered to complete any services or comply with any court orders.

In the July 31 adjudication order, Jeremy was identified as the "legal father" in the style of the order and the "putative father" in the body of the order. In this order, the court found that Jeremy had been served with the June 7 ex parte order. Morgan was ordered to submit to drug screening, attend and complete parenting classes, obtain stable housing and employment, submit to a drug-and-alcohol assessment and complete all recommendations, and resolve all criminal issues.

On September 17, the court entered a review order in which Jeremy was designated the "legal father" and "father" and was granted visitation with the children on court dates. In the December 17 review order, the court found that Morgan had tested positive for methamphetamine while in inpatient treatment. The court also found that Morgan had not exercised visitation as ordered and "needs mental health counseling." On January 18, 2019, another review order was entered, and again, the court found that Morgan had tested positive for illegal drugs, was not exercising visitation as ordered, and required mental health counseling.

On March 15, 2019, the court entered a review order in which it found that Jeremy was still incarcerated, and the children could not be placed with him. The court found that Morgan had partially complied with the case plan. Specifically, the court found that Morgan was in an outpatient-treatment program and had begun counseling, and she had finished parenting classes and her psychological evaluation; however, the court also found that Morgan had not been available for random drug screens or home visits, and it was not clear

where she was living. The court noted that it was "pleased with the father and he is taking advantage of the services available to him through the ADC. He is making an excellent effort and his second visit with the juveniles went better than the first. He is in full compliance." The court ordered Jeremy to notify the Department when he is released from prison and to provide his contact information.

On June 10, the court entered the permanency-planning order. The court found that Morgan did not have stable housing or employment, had not submitted to random drug screens or attended counseling, and had quit outpatient drug treatment. The court ordered the Department to provide transportation to Morgan to assist her in completing services. As to Jeremy, the court found that he was still incarcerated and ordered him to "take advantage of all services while in the ADC." The circuit court found that Jeremy had been appointed counsel.

On July 9, the Department filed a petition for termination of both Morgan's and Jeremy's parental rights. Regarding Morgan, the Department alleged that three statutory grounds supported termination: (1) the children have been adjudicated dependent-neglected and continued out of the custody of the parent for twelve months and despite meaningful efforts by the Department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; (2) the children have lived outside the home of the parent for a period of twelve months and the parent has willfully failed to provide significant material support in accordance with her means, or to maintain meaningful contact with the children; and (3) subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose that demonstrate that return of the

4

children to the custody of the parent is contrary to the children's health, safety or welfare and that despite the offer of services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances. As to Jeremy, the Department alleged one statutory ground—that he was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the children's lives.

The termination hearing was held on September 9. At the hearing, Morgan testified that she had around $7000 in fines and fees and stated that she was unaware that the amount was more than $11,000. Morgan explained that she had missed her original intake appointment for inpatient rehabilitation but that she completed inpatient treatment on November 2, 2018. Morgan explained that she was attending outpatient rehabilitation but that as recently as two weeks earlier she had used methamphetamine. Morgan testified that she had an unstable employment history throughout the case and that she had been at her current job for two weeks. She testified that a friend was letting her live in a trailer, and the electricity and water would be hooked up soon. Morgan testified that she believed she had attended thirty-three visits with her children, although according to the Department, she had attended visitation thirteen times. Morgan explained that she had trouble scheduling counseling because of work, running out of minutes on her phone, and "playing phone tag" with the scheduler.

Jeremy testified that he was going to be released on probation in five weeks; however, he did not have the related paperwork, and the Department disputed his claim. Jeremy explained that he had been incarcerated since June 9, 2017, and he had been

incarcerated all of JA's life. He stated that he loves his children and that visitation was going extremely well. He had attended and completed parenting classes, job training, substance-abuse education, and stress- and anger-management classes. Jeremy testified that he had been recognized for a substantial positive change in his behavior and conduct. Jeremy explained that he would go back to work when he was released, and he would live with his mother until he was allowed by the terms of his parole to move into a house of his own that was already waiting for him.

On September 19, the circuit court entered two separate orders terminating Morgan's and Jeremy's parental rights. In the first order, the circuit court found that clear and convincing evidence supported termination of Morgan's parental rights. Specifically, the circuit court found that it was in the children's best interest to terminate Morgan's parental rights, determining that MA and JA were adoptable, and Morgan posed a substantial risk of harm to the children if they were returned to her custody. The circuit court found that despite receiving treatment for her drug addiction, Morgan continued to use drugs, testing positive as recently as July 18. She maintained sporadic employment during the case and had been employed in her most recent job for two weeks, working only 7.58 hours during that period. The circuit court found that Morgan inconsistently visited the children, and she only recently obtained housing with no electricity or plumbing. The court found that each ground alleged by the Department was proved by the evidence and supported termination.

In a second termination order, the circuit court found that clear and convincing evidence supported termination of Jeremy's parental rights. The circuit court determined

that it was in the best interest of the children to terminate Jeremy's parental rights, finding that there was potential harm to the children's safety, health and welfare if they were placed in his custody because he was incarcerated at the time of the hearing. Moreover, the circuit court found that the children did not know Jeremy very well after only six visits. The court found that Jeremy's testimony that he would be released in five weeks was disputed by the Department and that it would take an "unreasonably long period of time" for the children to get to know Jeremy as a father. The court also found that Jeremy had not demonstrated stability and sobriety under noncontrolled conditions. The court determined that Jeremy conceded the statutory ground alleged in the petition that he had been incarcerated for a substantial period of the children's lives.

Both parents timely filed their notices of appeal.

II. *Discussion*

A. Jeremy

1. *Right to counsel*

For his first point on appeal, Jeremy argues that he was never notified of his right to counsel and that he was denied his right to counsel at the outset of the proceedings pursuant to Arkansas Code Annotated section 9-27-316 (Supp. 2019) and the Sixth Amendment.[1] We affirm.

---

[1]Jeremy does not dispute that the ex parte order, which contains notice that parents and legal guardians are entitled to an attorney at each stage of the proceeding, was properly served.

In his brief, Jeremy concedes that it is "unclear" if he ever asked for counsel to be appointed to him, as the statute requires. *See* Ark. Code Ann. § 9-27-316(h)(1)(D). Because Jeremy did not assert to the circuit court that he was not given notice of his right to counsel or that he was denied appointment of counsel at the proper time—either under the statute or the Sixth Amendment—his arguments are not preserved for appeal. Even in a case involving termination of parental rights where constitutional issues are argued, we will not consider arguments made for the first time on appeal. *Myers v. Ark. Dep't of Human Servs.*, 91 Ark. App. 53, 55, 208 S.W.3d 241, 242 (2005).

Moreover, Jeremy was not a parent "from whom custody was removed." While he had a right to be represented by counsel at all stages of the proceedings, he was not entitled to appointed counsel under Arkansas Code Annotated section 9-27-316 before the process moved to termination of his rights. It is undisputed that counsel was appointed for Jeremy at the permanency-planning hearing and appointment of counsel was confirmed in the permanency-planning order entered June 6—one month before the termination petition was filed and three months before the hearing on the petition to terminate parental rights; thus, no error occurred. Jeremy likens this case to *Buck v. Arkansas Department of Human Services*, 2018 Ark. App. 258, 548 S.W.3d 231. His argument is not well taken because *Buck* is factually distinct from the instant case. In *Buck*, the appellant was living in the home when the children were removed, and he repeatedly asked for counsel to be appointed to him. As we discussed above, Jeremy was incarcerated and out of the children's home at the time of their removal, and he concedes that he did not request counsel to be appointed to him.

## 2. *Best-interest finding*

Jeremy does not appeal the circuit court's determination regarding the statutory ground supporting termination; however, he asserts that the court's best-interest ruling should be reversed. We disagree and affirm.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that the termination is in the children's best interest. *Id.* The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Harper v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884. The circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *L.W. v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 44, 380 S.W.3d 489. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Id.* The goal of section 9-27-341 is to provide permanency in a child's life when returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849. The circuit court must also find that one of the grounds stated in the termination statute is

satisfied. *Id*. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id*.

Jeremy contends that he is bonded with the children and requests more time, allowing him to be released from prison and to demonstrate his ability to safely parent the children. He asserts that this case is similar to *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, in which the court allowed more time for the father to demonstrate stability; however, Jeremy concedes a critical difference between *Cranford* and the instant case. In *Cranford*, the children were placed in the custody of relatives. Indeed, our court specifically stated that "[o]ur holding in this case is largely grounded in the custody arrangement that was established after S.C. was removed from his parents' custody. S.C. has been placed in the custody of his maternal grandparents, and that is where he lived before this case began." *Id*. at 9, 378 S.W.3d 856. The two cases are not analogous because JA and MA were not placed in the custody of relatives. Unlike *Cranford*, here, the children's need for stability has not been met.

The court relied on the adoption specialist's testimony that there were several families willing to adopt the children. As for the potential-harm prong, the court found that Jeremy's testimony that he would be released from prison in five weeks was disputed by the

Department. Moreover, the court found that Jeremy had not maintained sobriety and stability outside a structured, controlled environment; thus, he had not demonstrated the ability to safely parent MA and JA. The court acknowledged the general success of Jeremy's visitation with the children but also found that MA and JA are friendly and warm with almost everyone, and his six visits were not enough contact to establish a relationship with them. The court reasoned that MA and JA had been out of the home for fifteen months and their need for stability overrode Jeremy's request for more time.

The circuit court's decision that it is in the children's best interest to terminate Jeremy's parental rights is not clearly erroneous, and we affirm.

### B. Morgan

Morgan's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and caselaw, stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9 (2019); *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004).

Our court clerk mailed a certified copy of counsel's motion and brief to Morgan's last-known address informing her of her right to file pro se points for reversal, and she has not filed pro se points. We affirm the court's decision to terminate Morgan's parental rights to MA and JA and grant counsel's motion to withdraw.

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1). The petition must include an argument section that lists all adverse rulings that the parent

received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6–9(i)(1)(B). Here, other than the termination, there were no adverse rulings.

The Department alleged three statutory grounds to support termination of Morgan's parental rights: (1) the children have been adjudicated dependent-neglected and continued out of the custody of the parent for twelve months, and despite meaningful efforts by the Department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; (2) the children have lived outside the home of the parent for a period of twelve months, and the parent has willfully failed to provide significant material support in accordance with her means, or to maintain meaningful contact with the children; (3) subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose that demonstrate that return of the children to the custody of the parent is contrary to the children's health, safety or welfare and that despite the offer of services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

The circuit court must find that one of the grounds stated in the termination statute is satisfied. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id*. Here, the failure-to-remedy ground

12

was supported by the evidence. Morgan testified that she continued to test positive for methamphetamine throughout the case, despite inpatient and outpatient treatment made available to her by the Department. As little as two weeks before the termination hearing, Morgan had used methamphetamine. Morgan's attorney argues that there would be no merit in challenging the sufficiency of the statutory grounds or the court's best-interest finding, and we agree.

Having reviewed the record and counsel's brief, we agree with counsel that an appeal from the circuit court's decision to terminate Morgan's parental rights would be wholly without merit. Because Morgan's counsel has adequately addressed the sufficiency of the evidence in the no-merit brief and has complied with the requirements of *Linker-Flores* and this court's rules, we affirm the circuit court's termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HARRISON and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Morgan Adame.

*Dusti Standridge*, for separate appellant Jeremy Adame.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.