Cite as 2021 Ark. App. 446

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-299

| | |
|---|---|
| HEATHER JONES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** November 17, 2021<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-20-145]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Heather Jones appeals from the order terminating her parental rights to her children EJ and LM. She challenges the sufficiency of the evidence regarding the circuit court's finding that termination was in the children's best interest. We affirm.

The Arkansas Department of Human Services (DHS) began investigating the family related to inadequate shelter and environmental neglect in February 2020. In March 2020, DHS exercised a seventy-two-hour hold on the children (ages 2 and 1). Heather Jones and Cody Mitchell, LM's father, could not be located and had left the children with relatives who could no longer care for them. DHS's investigation revealed that Heather had been convicted in Oklahoma for the second-degree murder of her then one-year-old daughter, who was killed during a robbery that Heather participated in ten years ago.

In June 2020, Heather stipulated at the adjudication hearing that her children were dependent-neglected given her drug abuse. A review hearing was held in September 2020, and

the resulting order found that Heather was not in compliance with the case plan or the court's orders, that she had visited LM and EJ only 50 percent of the allowable time, that she had continued to use methamphetamine, and that she had recently been arrested. The circuit court held another review hearing in January 2021 and changed the goal to adoption, having found that Heather was incarcerated and that she had failed to comply with the court's previous orders.

In February 2021, DHS petitioned to terminate Heather's parental rights. The court convened a hearing on the petition in March 2021. Important to Heather's argument on appeal is the testimony of Scott Loye, a licensed professional counselor who treated EJ and LM weekly throughout the dependency-neglect case. According to Loye, EJ's current diagnosis was autism with comorbid attention-deficit and adjustment disorders. Loye diagnosed LM with attachment-adjustment disorder and "a little bit of inattentiveness in an ADHD format."

Loye also discussed the relationship between Heather and her children, which he said had not progressed beyond "a very infantile parenting stage." He did not see much of a parent–child relationship between Heather and EJ, noting that EJ called her "Heather" although she tried to redirect him. The following colloquy occurred during Loye's testimony:

DHS's ATTORNEY: At this point in your relationship with the children therapeutically, your observations of Heather with the children, how would you categorize Ms. Jones being in the children's life at this time?

LOYE: I think these kids need to move on, into an adoption program and have a chance at really forming some bonds with, you know, these—if the foster moms are going to proceed with adoption, great, fantastic; if not them, with whoever it's going to be.

It—I can just not tell you how important it is, especially during this first five years of these kids' lives, to have that stability of knowing who you're going to look up to and that's going to be there to provide that need you have of

2

safety, along with the food and all the other necessities. But that safety need is so important, and if we don't have that, then when we move into our growth or our progressive period, you're already going to be filled with trust issues of everybody you meet. Anybody in this society that tells you one thing, you're not going to be grounded, and I just think it's so important for these kids. And then when you put autism on top of that, if Heather was to go back to living in incarceration or any type of prolonged period of time that she's going to be out of these kids' lives, it's just not fair to these kids, and it is definitely not in the best interest of the children to be labeled with that or saddled with that. They need to get a more solid structural basis, family in their lives. If we're going to help these kids, that's what they need.

DHS's Attorney: And I know you have emphasized the amount of work that's going to go into, especially [EJ], given the additional autism diagnosis. Would you say that he is not adoptable, based on these efforts?

Loye: No. I'm not going to say he's not adoptable. I would say that it's going to be tremendously difficult. I mean, I have asked the foster moms if they understand what they would be getting into, to adopt this child, and it was almost with tears in my eyes, because I've seen the stages of how hard this is, what it looks in six years old, what it looks like at eight, at ten, at thirteen, at fifty. You know, I know how much defiance gets brought into it at a later age.

. . . .

So, no, it's not that he's not adoptable, but it's going to take a very, very, very special and caring person to commit to the work it's going to take with that kid.

DHS caseworker Brenna Meyers testified during the termination hearing that EJ and LM had been placed in a foster home together, that they had not had multiple placements, and that the foster parents had not asked the children to be moved. She agreed that the current placement was "fully aware of any issues regarding EJ's autism and what special needs he may have" and that the foster parents were equipped to care for EJ's special needs.

As for Heather, she was incarcerated and serving a two-year sentence when the termination hearing convened. She said that she had been in touch with a manager at Popeye's who was willing to consider hiring her after her release from prison in six months. Heather had not completed parenting classes, a drug-and-alcohol assessment, or drug treatment. She had attended only nineteen out of forty-eight scheduled visits with her children.

From the bench the circuit court stated, "Based on the testimony of Mr. Loye and the testimony of Ms. Meyers, the children have been in a long-term steady placement through the term of this case. The Court would specifically find that any diagnosis testified to today is not a bar to adoption." The court's written order repeated its oral ruling on adoptability and further stated that the juveniles would face potential harm if placed with Heather because she was currently incarcerated and was in no position to care for a child. Heather timely appealed the April 2021 order that terminated her parental rights.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. *Id.* The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Harper v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884. The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's

finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

Heather argues here that there was insufficient evidence to support the court's best-interest finding because (1) Caseworker Meyers said nothing about the children's adoptability; (2) Therapist Loye said the children needed to move into an "adoption program" to form some bonds, but DHS does not have any such "program"; (3) there was no evidence that the children's foster parents intended to adopt them; and (4) the circuit court made no finding that this adoptability evidence would not have mattered to its ultimate decision. According to Heather, because the circuit court had no evidence with which to consider the likelihood that EJ and LM will be adopted, a reversible error occurred.

We disagree. Adoptability is not an essential element of proof in a termination case. *McDaniel v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 263. In other words, the identification of would-be adoptive parents is not a prerequisite to terminating a biological parent's rights. *Baker v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 507. All the law requires is that the circuit court consider the likelihood that the child will be adopted when making its best-interest determination. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. That was done to the law's satisfaction in this case.

Heather correctly points out that Arkansas caselaw supports a reversal when the record cannot adequately support a court's finding that it was in the child's best interest to terminate a mother's parental rights. For example, in *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, we reversed the termination when the court failed to consider an autistic child's disruptive behavior when determining whether he was adoptable. But in

*Grant* the record also showed that it had been difficult for DHS to find foster parents who would care for the child due to his issues; the child was extremely attached to his mother; there was only one person who might be interested in adopting the autistic child; and the mother had never subjected the child to harm. *Id*.

Each case turns on its own facts, and here the evidence supports the circuit court's finding that terminating Heather's parental rights was in the children's best interest. We cannot say that the court's decision was clearly erroneous given this record.

The Sebastian County Circuit Court order that terminated Heather Jones's parental rights is affirmed.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.