Cite as 2022 Ark. App. 26

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-21-292

|  |  |
|---|---|
| ELLA COX | **Opinion Delivered** January 19, 2022 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-20-197] |
| V. |  |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## MIKE MURPHY, Judge

Ella Cox appeals the termination of her parental rights to JC, who was two weeks old at the time of removal. Cox's counsel has filed a motion to withdraw and a no-merit brief pursuant to our rules and caselaw stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9(j) (2020); *Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004).

Our court clerk mailed a certified copy of counsel's motion and brief to Cox's last-known address informing her of her right to file pro se points for reversal. Williams has not filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) has not filed a brief. We affirm the Washington County Circuit Court's decision to terminate Cox's parental rights and grant her counsel's motion to withdraw.

Ella Cox and her husband, Garry, have intellectual disabilities that affect their ability

to parent safely. Garry does not appeal the termination. Ella has had her parental rights terminated as to other children, two in California and another in Oklahoma. JC came into DHS custody in February 2020 when DHS received notice of the family's history in Oklahoma. Upon notice, a family service worker located the Coxes at a hotel. The family service worker was concerned with how the parents handled JC and with the statement that, after that night, the family would be homeless. DHS exercised an emergency hold. JC was later adjudicated dependent-neglected due to neglect and parental unfitness. The initial goal of the case was for reunification with a concurrent goal of adoption.

Ella was afforded, among other services, a psychological evaluation, transportation to visitation with JC, homemaker services, and one-on-one parenting classes. The individual classes were an attempt by DHS to accommodate Ella's intellectual disability. The case progressed. In a permanency-planning order dated February 24, 2021, the court noted that DHS testified that the parents would need an aide around the clock to meet JC's basic needs. About a year after removal, DHS filed a petition to terminate the Coxes' parental rights, alleging that termination of parental rights would be in JC's best interest. The following grounds were pleaded: twelve months failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2021); subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*; and that Ella has had her parental rights involuntarily terminated as to another child, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*.

At the termination hearing, the court heard testimony surrounding JC's removal and DHS's attempts to work with Ella to learn how to parent safely. After a year of services,

DHS was concerned that Ella would soon be homeless again and had not progressed to a point where she could safely parent JC and meet his needs. The court heard about the conditions surrounding the removal and subsequent adoptions of JC's siblings, namely, the parents' instability and inability to safely care for their children.

Ella testified that she was divorcing Garry (who was, by then, in prison for arson) and living alone. She asked for more time to work with local agencies to find housing and to get some stability. She felt like she had done everything asked of her by DHS and wanted to know if people got their rights terminated just "because they're totally different than regular people."

The court heard testimony that JC was happy, healthy, and growing in his foster placement; that he is adoptable; and that his current foster parents were interested in adopting him.

At the conclusion of the hearing, Ella's parental rights were terminated for the grounds alleged in the petition. The circuit court found that DHS had proved the existence of one or more grounds alleged in its petition and that termination was in JC's best interest. An order to that effect followed, and from that order Ella timely appealed.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that the sought-after termination is in the children's best interest. The circuit court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. *Harper v. Ark. Dep't of Hum.*

3

*Servs.*, 2011 Ark. App. 280, 378 S.W.3d 884.

The circuit court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Pratt v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

In dependency-neglect cases, if after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit brief and move to withdraw. Ark. Sup. Ct. R. 6-9(j)(1). The brief must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). The brief must also include a statement of the case and the facts containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B); Ark. Sup. Ct. R. 4-2(a)(7).

In appellant's counsel's no-merit brief, counsel correctly asserts that the only adverse ruling was the termination itself and that there can be no meritorious challenge to the sufficiency of the evidence supporting termination of Ella's parental rights. Although the trial court found four statutory grounds for termination, only one ground is necessary to

support the termination. *See Campbell v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 82. In this case, it is undisputed that before the initiation of these proceedings, Ella had her parental rights involuntarily terminated as to JC's older siblings. One of the statutory grounds found by the circuit court was that, under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*, Ella had her parental rights involuntarily terminated as to another child. The circuit court wrote that

> [b]oth parents have previously had their parental rights involuntarily terminated as to a sibling of the juvenile. Specifically, the parents had their parental rights terminated in Shasta County, California as to two siblings of the juvenile in 2013. The parents have also had their parental rights involuntarily terminated as to another sibling of the juvenile in Ottawa County, Oklahoma [ ]. The parents' prior terminations were for the same reason that [JC] came into foster care-instability and inability to meet his needs and keep him safe. This ground supported termination of Ella's parental rights and any argument to the contrary would be without merit.

Next, counsel states in her no-merit brief that any argument challenging the circuit court's best-interest findings would be wholly frivolous. Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted and the potential harm to the health and safety of the juvenile if returned to the custody of the parent. In its order, the court specifically found that it had considered adoptability and potential harm to the child. Thus, the court considered both best-interest factors.

In the present case, DHS offered the undisputed testimony of the family service-worker supervisor, KC Oliver, who testified that JC is adoptable and there are no barriers preventing him from being adopted. Later in the hearing, JC's foster mother testified that her family is interested in adopting JC. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *See, e.g.*, *Cole v. Ark. Dep't of Hum. Servs.*, 2018

5

Ark. App, 121, 543 S.W.3d 540. There would be no meritorious challenge to the adoptability issue.

And we agree with Ella's counsel that any challenge to the potential-harm prong of the best-interest finding would be wholly frivolous. Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Here, the circuit court found that JC's health and safety would be at a risk of potential harm if returned to Ella's custody. It found that Ella had not demonstrated that she could even meet JC's needs during her supervised visits, and her limited mental capacity—while not determinative in itself—made her unable to meet JC's basic needs and keep him safe from harm. This is supported by the record.

JC came into DHS custody after a DHS worker observed his soon-to-be homeless parents handling him roughly. Ella threw her two-week-old baby to the DHS worker. DHS provided Ella fourteen weeks of services, including one-on-one services to try and help her learn how to parent appropriately. After a year of intensive personal instruction she was still unable to care for JC without constant supervision. At the hearing she was, again, soon to be homeless. It cannot be meritoriously argued that there was insufficient evidence to support the court's finding that JC would be subject to potential harm if returned to Ella's care.

Finally, there is no merit to Ella's request for more time to get settled in new housing and to continue working to be reunited with JC. The intent of the termination statute is to provide permanency in a child's life in all instances where the child cannot return to the family home, and it appears from the evidence that a return cannot be accomplished within

6

a reasonable period of time as viewed from the child's perspective. *See* Ark. Code Ann. § 9-27-341(a)(3). By the time of the hearing JC had spent all but two weeks of his life in foster care. Given Ella's inability to progress to a point where she could safely care for JC after over a year of services, it was not erroneous for the court to intrinsically deny this request in terminating her parental rights to JC.

Having examined the record and Ella's counsel's brief, we have determined that this appeal is wholly without merit. Accordingly, we affirm the order terminating Ella's parental rights and grant her counsel's motion to be relieved from representation.

Affirmed; motion to withdraw granted.

GRUBER and BARRETT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.