Cite as 2021 Ark. App. 328

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** 13

|  |  |
|---|---|
| | **Opinion Delivered** September 8, 2021 |
| NICHOLAS MCVAY | |
| APPELLANT | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15JV-19-34] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Appellant Nicholas McVay appeals the Conway County Circuit Court order terminating his parental rights to his seven children.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*[2] and Arkansas Supreme Court Rule 6-9(i),[3] appellant's counsel has filed a motion to withdraw and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent copies of the brief and the

---

[1]The order also terminated the parental rights of the children's mother, Sheyenne Hickem, but she is not a party to this appeal.

[2]359 Ark. 131, 194 S.W.3d 739 (2004).

[3](2018).

motion to withdraw to appellant, informing him of his right to file pro se points for reversal. Appellant has chosen to file pro se point asserting that reversal is necessary. We affirm the termination and grant counsel's motion to withdraw.

The Arkansas Department of Human Services (DHS) had been involved with appellant and his family dating back several years. When the children were removed in May 2019, there was an open protective-services case stemming from January 2019 following a true finding against appellant for failure to protect.[4] DHS provided services to the family during this time, including assisting with birth certificates and housing and performing random home visits. DHS was also in the process of providing home-making services, parenting classes, and a referral for Intensive Family Services prior to removal. DHS received a hotline referral for Garrett's Law on May 13, 2019, alleging that Sheyenne Hickem had given birth on May 11 and that the baby tested positive for methamphetamine and amphetamines. In addition to the drugs the baby tested positive for, Hickem tested positive for THC. DHS visited Hickem at the hospital, and subsequently went to perform a home visit. The home did not have running water and there was trash everywhere. Appellant tested positive for drugs, and he admitted having used methamphetamine in April. At a team decision meeting (TDM) held on May 15, it was decided that given the family's prior history, it was in the children's best interest that they be removed from the home.

DHS filed a petition for dependency–neglect on May 20, outlining the above history in an attached affidavit.[5] The court entered an ex parte order for emergency custody the

---

[4]Appellant physically abused Hickem in the children's presence.

same day. A probable-cause hearing took place on May 24. In the May 29 order, the court found that an emergency existed making it necessary for DHS to remove the children from Hickem's legal custody and that those conditions still existed. Hickem and appellant were given reasonable visitation and ordered to do certain things before custody of the children would be restored to them. Appellant was ordered to submit to random drug screens, attend and complete parenting classes, obtain and maintain stable and appropriate housing, obtain and maintain stable and gainful employment, attend counseling as recommended including domestic-violence treatment, submit to a psychological evaluation and follow the recommendations, submit to a drug-and-alcohol assessment and complete all recommendations, and to submit to a paternity test.

The children were adjudicated dependent-neglected due to parental unfitness and environmental neglect after the parties stipulated that their drug use and housing situation constituted neglect. In the July 22 order, the court acknowledged a previous child-support action where appellant had been adjudicated the father of three of the children, and the court also found that appellant was the parent of all the children as defined by the Arkansas Juvenile Code. The case goal was set for reunification with a fit parent.

A review hearing took place on October 24. In the order filed on October 25, the court found that the case goal should remain reunification. It also found that DHS had made reasonable efforts to provide family services and finalize a permanency plan for the children. The order stated that appellant had partially complied with the case plan, but had

---

[5]DHS filed an amended petition for dependency-neglect on July 12, naming appellant as the legal father of three of the children and the putative father of the other four children.

refused random drug screens, failed to schedule counseling after completing the intake, and had not followed through with the recommended outpatient substance-abuse treatment. The order also noted that although appellant claimed to be working small jobs, he had not offered any verification; he had tested positive for THC on a recent drug screen; and he had moved back into his camper, which was inappropriate for the children.

Another review hearing took place on January 23, 2020. In the order filed on February 4, the court found that custody of the children could not be returned to the parents due to lack of employment, lack of a driver's license, unreliable transportation, and continued drug use. Reunification remained the goal. The court made a reasonable effort finding in relation to DHS. The order found that appellant was not compliant with the case plan and that he had used methamphetamine less than a week before the hearing. It also stated that appellant had tried to circumvent the drug screen performed the day of the hearing by submitting a urine sample that registered no temperature.

The permanency-planning hearing (PPH) took place on May 7. In the May 13 order, the court found that the parents had not complied with the case plan. The court changed the case's goal to adoption and termination of parental rights. The court found that appellant had established sufficient contacts with the children to allow parental rights to attach, and appellant was appointed an attorney for the termination hearing.

DHS filed a petition for the termination of parental rights on July 17, alleging several grounds for the termination of appellant's parental rights to his seven children: (1) twelve-month failure to remedy (noncustodial parent); (2) twelve-month failure to provide significant material support or to maintain meaningful contact; (3) abandonment; (4)

4

subsequent other factors; and (5) aggravated circumstances in that there is little likelihood for successful reunification.

The termination hearing took place on September 17. Kayla Manrrique, of DHS, testified that she is the primary caseworker and that she was involved in the original removal. She stated that this case was somewhat different from most cases in that there was an active protective-services case prior to removal. She stated that when the protective-services case was opened, the family was living in a camper, which was deemed to be inappropriate. She said that the family subsequently began renting a house in Morrilton. She testified that DHS was contacted when Hickem and her newborn tested positive for drugs. She stated that after she left the hospital, she conducted a home visit and discovered that appellant was also positive for drugs. She said that a couple of days later, while conducting a TDM about the family, it was decided that the children needed to be taken into custody due to parental drug use and domestic violence. She stated that she was unable to conduct home visits with appellant after removal of the children because no one would come to the door even though she could hear someone inside the camper. She testified that the children were currently in different placements with relatives.[6] Manrrique stated that appellant completed outpatient drug treatment but that when DHS was able to perform drug tests on him, he consistently tested positive for marijuana. She said that appellant had not obtained appropriate housing, had not obtained employment, and had not corrected the conditions that caused removal

___

[6]The permanency-planning order incorrectly stated that the children were not being cared for by relatives.

or the ones that arose after removal. She stated that four months after the PPH, nothing had changed for the better.

On cross-examination by appellant's attorney, Manrrique stated that DHS's main concerns during the case were housing, employment, drug screens, no contact, and some domestic issues. She said that she was unable to verify the condition of the house or appellant's employment. She also stated that she was unable to perform random drug screens on appellant because she was unable to contact him at home and his phone was not working. She said that she even tried to contact appellant through his family. She testified that unstable housing and parental drug use would prevent the children from being returned to the home.

Upon questioning by the ad litem concerning appellant being listed as the putative father, Manrrique stated that there was no doubt that appellant is the father of all seven children as had been established by DNA testing and a finding by the court. She stated that her inability to do home visits hindered her from verifying the condition of the home and from conducting random drug tests on appellant. However, she said that there had not been a period in which the parents were able to remain substance-free. She further stated that the parents were unable to get along. Manrrique stated that the lack of suitable housing; the lack of stable, verifiable income; and the inability to remain drug-free pose a significant risk to the children. She testified that the children are adoptable and that there were no issues that would impair or impede their adoptability.

Brandy Cochran, of DHS, testified that she is the supervisor and that she has also been involved in the case since the beginning. She stated that all the children were in family

foster homes.[7] She said that the children live only a few miles away from each other and they visit each other often. She opined that the children were in appropriate placements at the time. She agreed that the children are adoptable. She stated that she shared Manrrique's concerns for potential harm. She said that it was in the children's best interest that parental rights be terminated so that they could be adopted.

Appellant testified that he had no doubt that he was the father of six of the children; however, he admitted that he was found to be the legal father of all seven children. He stated that he worked for Kimberly-Clark before COVID. He testified that he currently works as an electrician for Jeremy Jones Construction and that he has three hundred hours as an apprentice electrician. He said that since things are slow due to COVID, he is turning to Craigslist for jobs. He stated that since April, he has been making between $900 and $1,300 a month. He said that he has been saving money to find a better place to live and that he had recently purchased a truck.[8] He testified that Manrrique made only two home visits to his camper, and that at the time of the first visit, he was "indisposed," and the second time, he just avoided her. He stated that Manrrique would have known his employment and residential situation had she kept in contact with him. He said that he last heard from Manrrique on July 28 via a text message. He testified that in three to six months, he should have his electrician license and may be able to obtain assistance from Habitat for Humanity to build a home on his property. Appellant stated that he was currently clean and that he

---

[7]Two children are in one home, two more are in another, and three are in another one.

[8]He subsequently testified that he did not have any transportation.

had only been smoking marijuana "on and off" because he was worried about the case. He stated that the last time he used a drug other than marijuana was on May 29. He testified that he planned to maintain his sobriety by working, staying away from bad influences, and keeping his money in the bank. He denied completing outpatient treatment but stated that he attends counseling regularly. He conceded that the outpatient treatment could have been part of another service he received. He said that he visits with the children every Sunday and that he sometimes gets to see them when he is working around his mother's house. Appellant stated that the visits had been going great.

Upon questioning by the court, appellant stated that he had not paid any child support since the children were removed.

The court granted DHS's petition for termination after finding that the children deserved permanency. The termination order was entered on November 2. The court found that termination was in the children's best interest based on their adoptability and the fact that a return to the parents would subject the children to potential harm because the parents were unwilling to remedy the issues that caused removal. The court found four grounds that supported the termination of appellant's parental rights: (1) twelve-month failure to remedy (noncustodial parent); (2) twelve-month failure to provide significant material support; (3) subsequent other factors; and (4) aggravated circumstances in that there is little likelihood for successful reunification. Appellant filed a timely notice of appeal on November 20.

We review termination-of-parental-rights cases de novo.[9] We will not reverse the circuit court's ruling unless its findings are clearly erroneous.[10] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[11] In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility.[12]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[13] The court must also find by clear and convincing evidence one or more of the grounds for termination listed in Arkansas Code Annotated section 9-27-341(b)(3)(B)[14] in order to terminate parental rights.

Arkansas Supreme Court Rule 6-9(i)(1)(A) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the

[9]*Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543.

[10]*Holmes v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730.

[11]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[12]*Id.*

[13]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

[14](Repl. 2020).

record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal.[15]

Appellant's counsel notes that the evidence supports the termination of appellant's parental rights on all grounds listed by the court. However, counsel contends that proof of only one statutory ground is necessary to terminate parental rights.[16] According to counsel, there was sufficient evidence to support the twelve-month failure to remedy ground for a noncustodial parent.[17] Counsel explains that the children were removed in May 2019 for drug use and environmental issues with the home. Throughout the course of the case, appellant consistently tested positive for drugs, and his living situation had not improved. DHS's ability to fully assess appellant's living situation was hindered by his refusal to answer the door when DHS would show up. However, at the hearing, appellant testified that he had moved back into the camper that was previously deemed inappropriate for the children at the beginning of the protective-services case. Appellant maintained that he was clean at the hearing, but he admitted that he used marijuana on and off due to the stress of the case.

---

[15]*Linker-Flores*, *supra.*

[16]*See Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

[17]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b).

Thus, sixteen months after the children had been removed, appellant was in no better position when it came to his drug usage and his living conditions. We agree with counsel that no meritorious argument can be made that the circuit court erred in terminating appellant's parental rights on this ground.

Evidence also supports the court's best-interest finding. Both Manrrique and Cochran testified that the children are adoptable. Additionally, the court determined that the children would be subjected to potential harm if returned to appellant due to his failure to remedy the conditions that caused removal. A parent's continued drug use and his failure to provide a stable home both support the potential-harm finding made by the court.[18] Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody.[19]

Out of an abundance of caution, counsel also addressed other issues that arose during the pendency of this case. For example, in the permanency-planning order, the court erroneously found that the children were not being cared for by relatives when the goal was changed to adoption and termination of parental rights. However, as counsel correctly asserts, appellant did not appeal from the order, nor did he otherwise object to the finding. We will not address issues raised for the first time on appeal.[20] Additionally, appellant

---

[18]*See Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119 (continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case); *Carroll v. Ark. Dep't of Hum. Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004) (the failure to secure safe and appropriate housing is contrary to the child's well-being and best interest).

[19]*Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, 529 S.W.3d 684.

[20]*Sills v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 9, 538 S.W.3d 249.

seemed to request an additional three to six months to get everything in order; however, a child's need for permanency overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child.[21] Counsel also notes that there was a potential issue regarding the failure to appoint counsel for appellant at the beginning of the case even though he was living in the home with the children at the time of removal and had been adjudicated the father of at least three of the children. There is no indication that appellant made a right-to-counsel argument at any time before the circuit court; therefore, the issue is not preserved for our review.[22]

In his pro se points, appellant argues that he did not have proper legal representation. As discussed above, this issue is not preserved for our review. He also maintains that he loves his children and is in the process of getting his life back on track. He seems to ask our court to reweigh the evidence in his favor, which we will not do.[23] Therefore, appellant's pro se points provide no grounds for reversal.

Having carefully examined the record and counsel's brief, we conclude that counsel complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the termination of appellant's parental rights to his seven children and grant counsel's motion to withdraw.

---

[21] *McElwee v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 214, 489 S.W.3d 704.

[22] *See Adame v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 248, 601 S.W.3d 432.

[23] *Snider v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 502, 612 S.W.3d 199.

Affirmed; motion to withdraw granted.

KLAPPENBACH and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.